UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Holden Gallagher,                              Case No. 3:19-cv-01882

      Plaintiff

v.                                             MEMORANDUM OPINION
                                               AND ORDER

Southern Health Partners, et al.,

      Defendants


## BACKGROUND AND HISTORY

*Pro se* Plaintiff Holden Gallagher filed this action under 42 U.S.C. § 1983 against Southern Health Partners, Corrections Center of Northwest Ohio ("CCNO"), Nurse Julie (last name unknown), CCNO Nurse Judy (last name unknown), CCNO Health Administrator John Pannell, CCNO Corrections Officer Talbut, CCNO Corrections Officer Doan, CCNO Commanders, and CCNO Executive Director Dennis Sullivan. In the Complaint, Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs and subjected him to objectionable conditions of confinement. He seeks monetary damages and injunctive relief.

Plaintiff's Complaint is divided into two claims. First, he alleges Defendants denied him proper medical care. He indicates that on October 26, 2018, he informed intake personnel that he has asthma. He was listed as a chronic care patient. On November 14, 2018, he saw a nurse practitioner who wrote in his chart that he had not had a flair-up since childhood. Plaintiff denies

making this statement. As a result of that notation, he was removed from the chronic care list. He asked for an inhaler and his request was denied. He repeated his request several times, but the result stayed the same. He complained to Pannell and one of the physicians on staff. He indicates he was told his condition would be monitored and he would receive breathing treatments as needed. The physician prescribed Amoxicillin and prednisone.

On June 21, 2019, at 5:30 a.m., Plaintiff reported to a corrections officer that his throat was closing up and he had mild chest pain. He was taken to the medical department and given a breathing treatment. He contends his vital signs were not recorded after the treatment. At approximately 4:00 p.m., he reported to Corrections Officers Talbut and Doan that his throat was closing up again and the pain in his chest was more severe. They informed him that it was not a good time for movement. He indicates he was taken to the infirmary at 4:30 p.m. There, Nurse Julie came to evaluate him. Plaintiff states she did not check his heart or his lungs and refused him a second breathing treatment. Plaintiff demanded an EKG to determine if he was having a heart attack, but she also refused that request. Instead, she gave him antacid tablets and told him to wait in the waiting area for an assessment of his blood sugar levels. Plaintiff raised his concerns to Pannell who conceded Plaintiff should have had a blood test to determine if he showed signs of having experienced a myocardial infarction. He alleges he did not receive that blood test.

Plaintiff further alleges that in June 25, 2019, Nurse Judy did not give him one of the three medications prescribed for him. He claims she recorded that he refused his meds. He states that after three refusals, the medication is discontinued.

Plaintiff's second claim he attempts to assert as a class action. He lists numerous conditions of confinement to which he objects:

    1. Inmates are no longer allowed to receive photos in the mail. They must be sent electronically via electronic tablets at a cost of five cents per view.

2. The network for the tablets is slow.

3. The facility exceed the occupancy for the number of toilets and showers available in the dorms.

4. The ED lockdown does not have hot potable water in the cells.

5. The grievance system for health care is inadequate.

6. Blankets are not cleaned or exchanged monthly as required.

7. Bedding is not always in good condition. Inmates are not always given mats.

8. The facility does not maintain documentation on bedding, linens, and clothing.

9. If an inmate goes to lockdown, all of his or her property goes to the property room and is not available until the inmate's release.

10. Church services are only available to minimum security units and only five inmates per unit are permitted to go at a time. He contends each day more than five inmates sign up meaning some inmates are denied services on those days.

11. The library currently is available only to minimum security inmates. Soon, it will only be available online through tablets. He contends this is not sufficient.

12. Inmates will soon receive all mail electronically through a tablet.

13. After three misses of medication, it is discontinued, even if the inmate was on a visit or asleep when the medications were handed out.

14. Medical staff have mixed up medications between inmates.

15. Inmates are limited to one request to staff in a twenty-four hour period.

16. The medical team allows inaccurate statements to be placed in the files.

17. Staff have opened inmate legal mail without the inmate being present.

18. Staff fail to provide adequate mental health and medical treatment to inmates.

19. The air ducts and vents are not inspected and cleaned daily.

20. Cleaning chemicals are refilled on Thursdays but are depleted by Sunday or Monday. Additional jugs of cleaning chemicals were added in July, but are refilled now every two weeks, rather than every week.

21. The facility has an insect infestation in the J2 bathroom. The corrections officers have put in work requests but the problem has persisted for two months.

22. Inmates are not permitted to brush their teeth during night hours.

23. The facility tightened policies when a federal inspection occurred, forcing inmates to work to prepare the facility. When inmates refused to work, the first shift commander advised the corrections officers to turn off the television and take away the tablets.

24. Inmates are deprived of sleep. Night hours are from midnight to 6:45 a.m. The dorm porters, however, wake up at 4:00 a.m. to clean. Breakfast is served at 5:15 a.m. and the lights are turned on at that point. Plaintiff contends 4 to 5 hours in not enough sleep.

**STANDARD OF REVIEW**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), I am required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this

4

pleading standard. *Id.* In reviewing a Complaint, I must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## ANALYSIS

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Baker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Pretrial detainee claims, though they arise under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, *City of Revere v. Mass. Gen. Hosp.*,463 U.S. 239, 244 (1983), are analyzed under the same rubric as Eighth Amendment claims brought by prisoners. *See Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985) (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).

It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his or her] serious medical needs." *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations and citations omitted). A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The United States Court of Appeals for the Sixth Circuit has explained as follows:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).] The subjective component regards prison officials' state of mind. *Id.* Deliberate indifference "entails something more than mere negligence but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895-96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, 787-88 (6th Cir. 2011). The objective component mandates that a Plaintiff demonstrate a "sufficiently serious" medical need, "which is one that has been diagnosed

5

by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (internal citations omitted).

The subjective component requires the Plaintiff to demonstrate that each of the Defendants was deliberately indifferent to that serious medical need. In the context of deliberate indifference claims, the Sixth Circuit distinguishes between cases where the Plaintiff alleges a complete denial of medical care and those cases where the Plaintiff claims he or she received inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5. (6th Cir. 1976). Similarly, medical malpractice does not satisfy the subjective component. *Grose v. Corr. Med. Servs, Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010). A difference of opinion between a prisoner and the prison health care providers over a diagnosis or the adequacy of the prisoner's treatment does not amount to an Eighth Amendment claim. *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002).

It is possible, however, for medical treatment to be so woefully inadequate as to amount to no treatment at all. *Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted). In those situations, the treatment provided must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to rise to the level of a constitutional violation. *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002). Plaintiffs must satisfy both the objective and subjective components to adequately state a claim for deliberate indifference.

Plaintiff's claims against Talbut, Doan, and Nurse Julie stem from the same incident. Plaintiff alleges he believed he was having an asthma attack and a heart attack. He reported this to Talbut and Doan but their evaluation of the situation did not lead them to believe Plaintiff was

6

suffering from a serious medical condition. Instead, they told him it was "bad timing for movement with blood sugars." (Doc. No. 1 at 4). Thirty minutes later, Plaintiff was escorted to the infirmary. At the infirmary, Nurse Julie took his vital signs and concluded that he was not experiencing a serious health emergency. Plaintiff demanded an EKG but she said it was not necessary. She gave him antacids and told him to wait with everyone for blood sugars.

Deliberate indifference is a high standard to meet. It requires more than a showing of negligence or medical malpractice. It requires Plaintiff to demonstrate that the official knew of and disregarded an excessive risk to inmate health or safety. *Flanory v. Bonn*, 604 F.3d 249, 253-55 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* The facts as alleged do not suggest that Plaintiff actually suffered an asthma attack or a heart attack. They also do not suggest that Talbut, Doan, or Julie perceived an excessive risk to his health and deliberately disregarded that risk. Although Pannell later conceded to Plaintiff that an EKG should have been done to confirm that he was not having a heart attack, this suggests at best negligence and not deliberate indifference.

Plaintiff claims Nurse Judy was deliberately indifferent to his serious medical needs by not providing one of his medication on June 25, 2019, at the 6:15 p.m. medication disbursement. He alleges he was on a visit when the medication was delivered to inmates. He indicates that if an inmate is not present for the disbursement because he is on a visit or is asleep, the nurses record it as a refusal. Three refusals result in a discontinuation of the medication. He states he was provided the other two medications. This appears to be an isolated incident in which he was not provided with one medication. The facts as alleged do not suggest a claim of deliberate indifference.

The remaining three Defendants, Southern Health Partners, Commanders, and Dennis Sullivan are not mentioned at all in the Complaint. As a general matter, Southern Health Partners

7

and Commanders are entities composed of numerous unnamed individuals.  Plaintiff cannot target an entity or a vague group of people to hold the individuals in that entity or group liable.  Moreover, as there are no allegations in the Complaint against Southern Health Partners, Commanders, and Sullivan, and Plaintiff has not established that they knew of an excessive risk to Plaintiff's health and disregarded that risk.

Plaintiff's second Eighth Amendment claim pertains to conditions of confinement.  These claims also have the same objective and subjective components.  In terms of conditions of confinement, the Eighth Amendment prohibits them from being "barbarous" or contravening society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  It protects inmates by requiring that "prison officials ... ensure that inmates receive adequate food, clothing, shelter, and medical care, and ... 'take reasonable measures to guarantee the safety of the inmates.' "  *Farmer*, 511 U.S Id. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  This, however, does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration.  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  Prisoners cannot "expect the amenities, conveniences and services of a good hotel."  *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988); *see Thaddeus-X v. Blatter*,175 F.3d 378, 405 (6th Cir. 1999).

In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute health threats but does address those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance.  *Hudson*, 503 U.S. at 9-10 (requiring extreme or grave deprivation).  None of the twenty-four conditions listed by the Plaintiff concern a deprivation of adequate food, clothing, or shelter, nor do they directly impact the safety of the inmates.  Instead, they are things which may be uncomfortable or annoying.  There is no suggestion that they rise to the level of an Eighth Amendment violation.

Furthermore, even if any of the claims could be construed as a sufficiently serious deprivation, Plaintiff has not alleged facts suggesting that any of the named Defendants was aware of these conditions and acted in deliberate indifference toward his health and safety.

Finally, Plaintiff seeks to proceed with a class action for this second claim. A litigant may bring his own claims to federal court without counsel, but not the claims of others. Federal Civil Procedure Rule 23 providing for class action lawsuits does not permit a *pro se* inmate to serve as class representative. *See e.g.*, *Palasty v. Hawk*, No. 00-5840, 15 Fed. Appx. 197, 200 (6th Cir. June 20, 2001) (citing *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (6th Cir. 2000)).

## Conclusion

Having considered and examined the *pro se* Plaintiff's pleadings to determine their legal viability, I conclude they fail to state a claim upon which relief may be granted. Therefore, this action is dismissed pursuant to 28 U.S.C. § 1915(e). I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith. This case is closed.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge